UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

UNITED STATES OF AMERICA,   Case No. 1:18-cr-00107-AA
                            **AMENDED OPINION AND ORDER**
    Plaintiff,
v.

ERIK ARTHUR BERRY,

    Defendant.

---

AIKEN, District Judge:

Defendant has been sentenced to sixty months imprisonment for the possession of child pornography in violation of 18 U.S.C. § 2252A. The government now seeks mandatory restitution under 18 U.S.C. § 2259 for "Maureen," "Emily," "Casseaopeia," "Erin," "Fiona," "Jane," "Jenny," "Pia," "Ava," and "Mya," the ten identified victims. *See id.* § 2259 (a) ("the court shall order restitution for any offense under this chapter"). A restitution hearing was held on June 27, 2019 and the Court took the parties' arguments under advisement. Doc. 38.

## DISCUSSION

The operative restitution statute provides that "the court shall order restitution for any offense under this chapter" and "shall direct the defendant to pay the victim . . . the full amount of the victim's losses." 18 U.S.C. §§ 2259(a), (b)(1).[1] Thus, restitution is mandatory for child pornography offenses.

The Supreme Court established the appropriate causation standard for restitution awards in child pornography cases. *See Paroline v. United States*, 134 S. Ct. 1710, 1713–14 (2014). In *Paroline*, the Supreme Court rejected the argument that a defendant convicted of possessing child pornography could be held liable for the full amount of a victim's losses. *Id*. Instead, the Supreme Court imposed a standard of proximate causation: "Restitution is therefore proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." *Id.* at 1722. At the same time, the Court disavowed a strict, "but-for" causation standard; reasoning that for the purposes of § 2259, the unique harm suffered by child pornography victims, and the "atypical causal process" underlying the victims' losses supported the adoption of principles underlying the government's "aggregate causation" theory and a more flexible causation approach. *Id.* at 1723–24, 1726 (reiterating that "aggregate causation theories" are not "irrelevant" in determining restitution). Ultimately, the Court held that a district court should order restitution "in an amount that comports

---

[1] "[T]he term 'full amount of the victim's losses' includes any costs incurred by the victim for- (A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) reasonable attorneys' fees, as well as other costs incurred; and (F) any other relevant losses incurred by the victim." 18 U.S.C. § 2259(c)(2).

with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 1727. Nonetheless, "[t]his approach is not without its difficulties." *Id.* at 1729 (Roberts, C.J., dissenting).

In *United States v. Galan*, I agreed with a recurring theme trumpeted by the dissent in *Paroline*; that full restitution for child pornography victims cries out for a legislative, rather than a judicial, solution. *See* 2014 WL 3474901 (D. Or. July 11, 2014). While I did not necessarily agree with the *Paroline* dissent that "[t]he statute as written allow[ed] no recovery," I certainly agree[d] with the admonition that "Congress [should] fix it." 134 S. Ct. at 1735 (Roberts, C.J., dissenting).

I was not alone in joining Chief Justice Robert's and Justice Sotomayor's calls for Congressional action. *See, e.g., United States v. Schultz*, No. 14-10085-RGS, 2015 WL 5972421, at *3 (D. Mass. 2015) (Judge Stearns stating that Congressional action "would eliminate much of the present variability in victim restitution awards."); *United States v. Whitley*, 354 F. Supp. 3d 930, 939 (N.D. Ill. 2019) (Judge Kendall stating that "the criminal justice system is failing [child pornography] survivors by forcing them to bear the permanent costs of their own trafficking" and highlighting the need for the other branches to ensure mandatory restitution to victims takes place).

Additionally, numerous researchers have argued for reforming the restitution system for child pornography victims. For instance, Professor Warren Binford argued in 2015 that "Congress must pass new legislation [...] so that the victimization does not continue in perpetuity and the individuals harmed by this horrific crime have the

opportunity to recover once and for all." Warren Binford *et al.*, *Beyond Paroline: Ensuring Meaningful Remedies for Child Pornography Victims at Home and Abroad*, 35 Child. Legal Rts. J. 117, 133 (2015). Professor Cortney Lollar further argued that "[t]he desire to make things right for the young women depicted in child pornography by compensating them for the pain they have experienced is understandable, [but] restitution [in its current form] can serve to exacerbate those harms." Cortney E. Lollar, *Child Pornography and the Restitution Revolution*, 103 J.Crim. L. & Criminology 343, 350 (2013).

Against the backdrop of these calls for reform, Congress recently enacted the Amy, Vicky and Andy Child Pornography Victim Assistance Act of 2018 (AVAA). *See* Pub. L. No. 115-299, 132 Stat. 4383 (2018). The Act considers Justice Sotomayor's recommendations in *Paroline* by recognizing the aggregate causation principle and enacting a fixed minimum restitution amount of $3,000 within 18 U.S.C. § 2259 (b)(2)(B). *See United States v. Monzel*, 2019 WL 3242386, at *1 n.1 (D.C. Cir. 2019). The Act also created a defendant-financed restitution fund, the Child Pornography Victims Reserve. *See* 18 U.S.C. § 2259B. Child pornography victims, at their election, can receive a one-time fixed amount of $35,000 to help them recover, non-exclusively of restitution. *See* 18 U.S.C. § 2259A. It is funded by special assessments imposed on convicted Defendants, graduated based on seriousness of crime ($17,000 maximum for possession, $50,000 for production, $35,000 for other trafficking). *See id.* To be eligible, a claimant must be found by the Court to be a "victim of the defendant who was convicted of trafficking in child pornography." 18 U.S.C. § 2259(d)(1)(A). The

fund has numerous advantages: victims can access at least some of the funds they need to support their recovery relatively quickly, especially compared to restitution or civil litigation, and defendants must pay into the fund whether or not a victim is identified, meaning that offenders do not escape liability.

The $3,000 minimum restitution amount may be inadequate. *See* Paul G. Cassel, *et al.*, *The New Amy, Vicky, and Andy Act: A Positive Step Toward Full Restitution for Child Pornography Victims*, 31 Fed. Sent. R. 187 (2019), *available at* 2019 WL 1282359. But this fixed minimum amount prevents courts from awarding nominal or trivial amounts for restitution, which further protects victims.[2] In this case, it allows the Court to dismiss Defendant's request that he be ordered to pay $1,000 in restitution to each victim. *See* Def.'s Memo. Regarding Calculation of Restitution. While it is true that "restitution in child pornography cases must comport with a Defendant's relative role in causing the underlying victim's general losses," and that Defendant is "only responsible for a portion of the damage caused to the victims in this case," the new statute under AVAA establishes that "the court shall order restitution in an amount that reflects the Defendant's relative role in the

---

[2] 18 U.S.C. 2259B(d) states that "It is the sense of Congress that individuals who violate this chapter prior to the date of the enactment of [AVAA] but who are sentenced after such date, shall be subject to the statutory scheme that was in effect at the time the offenses were committed." But such "sense of Congress" language is considered legislative dicta and not binding on the Court. *Yang v. Cal. Dept. of Soc. Serv.*, 183 F.3d 953, 961 (9th Cir. 1999); *see also Singh v. Napolitano*, 909 F.Supp.2d 1164, 1176 (E.D. Cal. 2012) (explaining that sense of language in 8 U.S.C. § 1571(b) did not set a binding time frame for certain immigration applications); *Bian v. Clinton*, 605 F.3d 249, 255 (5th Cir. 2010) (same). Particularly given the difficulty in assessing the appropriate restitution amounts for victims of child pornography, the Court does not find it sensible to depart from the recently enacted statutory restitution floors in AVAA.

causal process that underlies the victim's losses, but which is no less than $3,000."
18 U.S.C. § 2259.

In this case, Defendant possessed over 600 images or videos of child pornography. The ten different victims are seeking restitution from Defendant as follows: Maureen is seeking $10,000 and Emily is seeking $15,000; Casseaopeia, Erin, Fiona, Jane and Jenny are each seeking $3,000; and Pia, Ava and Mya are each seeking $5,000.

*Paroline* does not preclude restitution when the amount of losses caused by a defendant's conduct cannot be determined with precision. *Paroline*, 134 S. Ct. at 1715 ("Just as it undermines the purpose of tort law to turn away plaintiffs harmed by several wrongdoers, it would undermine the remedial and penological purposes of § 2259 to turn away victims in cases like this."). Rather,

> where it can be shown both that a Defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual Defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the Defendant's relative role in the causal process that underlies the victim's general losses.

Id. at 1727 (emphasis added).

The Supreme Court recognized the difficulty of calculating an appropriate amount of restitution but noted that district courts often are faced with imprecise evidence:

> At a general level of abstraction, a court must assess as best it can from available evidence the significance of the individual Defendant's conduct in light of the broader causal process that produced the victim's losses. This cannot be a precise mathematical inquiry and involves the use of

> discretion and sound judgment. But that is neither unusual nor novel,
> either in the wider context of criminal sentencing or in the more specific
> domain of restitution.

Id. at 1727–28.

The Ninth Circuit has mandated courts to "disaggregate" from the losses caused by the original abuse, as well as from the "ongoing distribution and possession of images of that original abuse," not attributable to the Defendant. *United States v. Galan*, 804 F.3d 1287, 1291 (9th Cir. 2015). However, the court expressed no opinion about "what portion of a victim's ongoing loss should be attributed to an original abuser," yet "precision is neither expected nor required." *Id.* In *Paroline*, the Supreme Court suggested that the award of restitution is based on factors "that bear on the relative causal significance of the defendant's conduct in producing those losses." 134 S. Ct. at 1728. The factors courts may consider include the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom may never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role. *Id.* My task is to determine the appropriate amount of restitution against this backdrop.

/ / /

1. **Maureen**

The total amount of losses caused by the ongoing circulation of Maureen's images is estimated to be $440,000. Maureen is seeking restitution in the amount of $10,000. Maureen "associates every person who downloads her images as someone who is just like her primary abuser." Gov.'s Sentencing Memo Ex. B. Her clinical psychologist, Dr. Randall Green "described an array of psychological sequelae directly related to her awareness of the ongoing internet exploitation." Gov.'s Restitution Memo. Thus, trafficking in her child pornography images establishes proximate cause in her case. Using *Paroline*'s general rule of reasonableness in ordering restitution, I find that $10,000 is unreasonable considering the amount other defendants had to restitute previously. The highest amount awarded to Maureen for possession has been $5,000 and $1,000 has been the lowest. While not controlling in this case, I again find the recently enacted AVAA helpful in reaching an equitable award. While prescribing no maximum amount of restitution, the act specifically sets $3,000 dollars as the minimum amount which must awarded in restitution. Since her losses have increased since August 15, 2018, I find it reasonable to order restitution in the amount of $5,000 to Maureen.

2. **Emily**

The total amount of losses caused by the ongoing circulation of Emily's images is estimated to be $293,000 to $311,000. Emily is seeking restitution in the amount of $15,000. Emily's clinical and forensic psychologist Dr. Skolar found that "the continual viewing and violation of Emily on the Internet recapitulates, exacerbates,

compounds, and prolongs her original continuing symptomatology, and impedes her psychological healing." Gov.'s Sentencing Memo Ex. D. He attributes "75% [of her current need for treatment] to the ongoing harms she suffers from knowing that images of her abuse continue to circulate on the Internet." *Id.* Therefore, proximate cause is established in this case. I find it reasonable to order restitution in the amount of $5,000 to Emily. This amount is also reasonable given the range that Congress found appropriate in possession cases between $3,000 and $17,000. It is also reasonable in light of previous restitution awards to Emily, whose highest single award was $8,000 in a distribution case.

### 3. Jenny, Casseaopeia, Erin, Fiona, Jane

Jenny is seeking restitution in an amount "that reflects the Defendant's relative role in the causal process that underlies her losses, but which is no less than $3,000." The total amount of losses caused by the ongoing circulation of Jenny's images is estimated between $3,642,125 and $6,778,912. Dr. Kathleen Coulborn Faller, a Ph.D. clinical social worker described that "each downloading causes [Jenny] additional trauma." Gov.'s Sentencing Memo Ex. H. Proximate cause is therefore established. Eleven defendants have been ordered to pay restitution to Jenny. Since the highest award was $11,000 in a production case, the lowest $500 in a receiving case, the average amount $3,636 and the fixed-minimum amount $3,000, I find that $3,000 is reasonable considering the amount other defendants had to restitute but insufficient considering the fact that Jenny is unlikely to be compensated for the full

amount of her losses if she keeps receiving small amounts of restitution. Therefore, I find it reasonable to order Defendant to pay $4,000 in restitution to Jenny.

The total amount of losses caused by the ongoing circulation of Casseaopeia's images is estimated to be $1,078,721. Casseaopeia is seeking restitution in an amount "that reflects the Defendant's relative role in the causal process that underlies her losses, but which is no less than $3,000." According to her forensic psychologist, it is the anonymous, furtive nature of the crimes of receipt, distribution and possession of child pornography, along with the fundamental invasion of her privacy and personal dignity, which causes Casseaopeia the greatest harm." Proximate cause is well established in this case. Under *Proline*'s general rule of "reasonableness" in ordering restitution, I find it reasonable to order restitution in the amount of $4,000 to Casseaopeia.

Erin and Fiona are seeking restitution in an amount "that reflects the Defendant's relative role in the causal process that underlies her losses, but which is no less than $3,000." Gov.'s Sentencing Memo Ex. F. The ongoing collection and trading of Erin and Fiona's child sex abuse images have caused them long-lasting and permanent harm, especially since their images are depicted in "one of the most widely trafficked sets of child sex abuse images in the world." *Id.* They were "sexually abused specifically for the purpose of producing child sex abuse images which the Defendant was found to possess." *Id.* Proximate cause is established in this case. The Government did not prove the total amount of losses incurred by the victims.

Therefore, I order Defendant to pay the minimum amount of restitution to Erin and Fiona, that is to say $4,000 each.

The total amount of losses caused by the ongoing circulation of Jane's images is estimated to be between $4,453,993 and $7,749,603. Gov.'s Sentencing Memo Ex. G. She is seeking restitution in an amount "that reflects the Defendant's relative role in the causal process that underlies her losses, but which is no less than $3,000." For Jane, feelings of mistrust and fear "are exacerbated in intensity, duration, and frequency, by the existence of her images on the Internet." Gov.'s Restitution Memo. She has stated that "If it wasn't out there, I wouldn't be as fearful as I am now." Ex. G. Proximate cause is well established in this case. Under the general rule of reasonableness in ordering restitution, I find it reasonable to order restitution in the amount of $6,000 to Jane.

### 4. Pia, Ava, Mya

Pia, Ava and Mya are each seeking restitution in the amount of $5,000. "As a result of the ongoing circulation of their images, Pia, Ava, and Mya each suffer psychological injury, and each are in need of assistance and restitution." Gov.'s Sentencing Memo Ex. I. The Government did not prove the total amount of losses incurred by the victims. Therefore, I order Defendant to pay the minimum amount of restitution to Pia, Ava, Mya, that is to say $3,000 each.

## CONCLUSION

For the foregoing reasons, the Court orders restitution in the following amounts:

(1) $6,000 in restitution to Jane.

(2) $5,000 in restitution to Maureen and Emily.

(3) $4,000 in restitution to Casseopeia, Erin, Fiona, and Jenney

(4) $3,000 in restitution to Pia, Ava, and Mya.

IT IS SO ORDERED.

Dated this 6th day of January, 2020.

_____
Ann Aiken
United States District Judge